UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNETTE DOREEN CARSON,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:21-cv-00508-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF No. 1, 18). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issue:
A. The ALJ erred in finding that Plaintiff's cervical spine degenerative disc disease and fibromyalgia were non-severe impairments at Step Two and the resultant RFC fails to include limitations related to that impairment.

(ECF No. 18, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

1

## I.     ANALYSIS

Plaintiff argues that the ALJ erred at Step Two by failing to find Plaintiff's cervical spine degenerative disease and fibromyalgia to be severe impairments. As a result, Plaintiff argues that the RFC assessment failed to reflect limitations related to those impairments.

If a claimant has a medically determinable impairment (MDI), the ALJ must determine "whether [the] impairment(s) is severe," which is referred to as Step Two. 20 C.F.R. § 404.1521. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is a "de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments. *See also Yuckert*, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 686.

### A.     Cervical Spine Degenerative Disease

Here, the ALJ found Plaintiff's lumbar disc degenerative disease to be severe. (A.R. 43). However, the ALJ concluded that Plaintiff's cervical spine degenerative disc disease was not a

severe impairment:

> After carefully considering the medical evidence of record in its entirety, I find that the claimant's cervical spine degenerative disease. . . [does] not significantly limit the ability to perform basic work activities and are therefore nonsevere.
>
> July 2, 2015 cervical spine x-rays revealed diffuse osteopenia without evidence of fracture or significant subluxation. There was diffuse disc space narrowing at C4-5, C5-6, and C6-7 with osteophytosis and facet and uncovertebral joint arthropathy. There was no nerve root impingement. (*See* Exhibit 8F/32-33).
>
> On March 14 and 17, 2016 examination, she had tenderness of the left cervioscapular, and decreased range of motion with lateral bend to the right. Rotation was normal. (Exhibits 12F/146 and 13F/5). She rarely, if ever, exhibited abnormal cervical spine findings otherwise. (*See* Exhibits 1F, 2F, 3F, 4F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 14F, and 15F). Indeed, at the March 22, 2017 State Agency consultative examination, her neck range of motion was within normal limits. (Exhibit 4F/3). As such, I find her cervical spine degenerative changes to be nonsevere.

(A.R. 43).

Plaintiff contends that the ALJ erred in finding Plaintiff's cervical spine degenerative disease to be non-severe. (ECF No. 18, pp. 18-20). Step Two is a *de minimis* standard to screen out non-meritorious claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Here, the medical evidence does not "clearly establish" Plaintiff's cervical spine degenerative disease as non-severe. *See Webb*, 433 F.3d at 687.

The ALJ found Plaintiff's cervical disease to be non-severe because a July 2015 cervical spine X-ray did not evidence any fracture, significant subluxation, or nerve root impingement. (A.R. 43 (citing A.R. 892-3)). However, as Plaintiff points out, this analysis omitted reference to an October 28, 2015 MRI scan that had significant findings that are not consistent with this opinion. (*See* ECF No. 18, p. 18 (citing A.R. 1382)). Specifically, the MRI found "[m]oderate cervical spondylosis with multilevel neural foraminal stenosis, most evident on the left at C6-C7" and "[a]dditional central canal and neural foraminal narrowing." (A.R. 1382). The Commissioner argues that the ALJ's finding is supported by the relative lack of abnormal cervical findings during Plaintiff's physical examinations (*see* A.R. 43 (citing A.R. 326-417, 420-1768), as well as the ALJ's reliance on a March 2017 state consultative medical examination where Plaintiff's range of motion in her neck was found to be within normal limits (A.R. 43 (citing A.R. 412)). However, the ALJ's general citation to over a thousand pages of the medical record, including

3

mental health treatment notes and specialist visits for conditions unrelated to Plaintiff's neck pain, does not indicate that the ALJ considered the MRI findings at all. To not discuss this evidence, and base the finding on less probative evidence, was error. *See Webb*, 433 F.3d 683, 688 (substantial evidence did not support finding claimant's lower back pain to be non-severe where the record included x-rays showing "disc space narrowing" and a doctor's opinion that claimant may have suffered "degenerative" back conditions and "disc fragmentation or significant herniation").

The Court next looks to whether the ALJ's error was harmless. Any error in failing to find an impairment severe at Step Two is harmless where the ALJ considers the limitations posed by the impairment in the step four analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Buck v. Berryhilld*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Where the ALJ ultimately decided step two in the claimant's favor, "she could not possibly have been prejudiced."). Here, it does not appear that the ALJ specifically addressed symptoms related to cervical spine disease when determining Plaintiff's RFC, and the ALJ's earlier determination that the impairment was not severe may have limited the evaluation at this step as well. Accordingly, the Court finds remand warranted to address what, if any, additional limitations should be added to the RFC regarding the cervical degenerative disc impairment, and whether any change to the RFC affects the ALJ's ultimate decision regarding disability.

B. Fibromyalgia

As discussed above, the ALJ found Plaintiff's lumbar disc degenerative disease to be severe. (A.R. 43). However, the ALJ concluded that Plaintiff's fibromyalgia was not a severe impairment:

> After carefully considering the medical evidence of record in its entirety, I find that the claimant's. . . fibromyalgia/myofascial pain syndrome . . . [does] not significantly limit the ability to perform basic work activities and are therefore nonsevere.

(A.R. 43).

> Treating notes show the claimant's providers at Kaiser Permanente diagnosed her with myofascial pain syndrome (fibromyalgia). (*See* Exhibit 9F/13). Fibromyalgia was later included in her past medical history at Camarena Health Centers, (*see* Exhibit 6F/17), and on October 12, 2017, internist Dr. Pushkal Jadaun, M.D., to whom the claimant was referred for a disability evaluation, (*see* Exhibit 6F/25),

found that she had tender points all over the body, consistent with fibromyalgia. (Exhibit 6F/19). Earlier, on March 14, 2016, D. Muhammad Khalid Akbar, M.D. of Kaiser Permanente found on examination that all four of the claimant's extremities had mild-to-moderate tenderness present over tender points of fibromyalgia. (Exhibit 12F/147). On March 10, 2016, then primary care physician Dr. Maribeth Sian Ruiz, M.D. found that she was positive for trigger points on the back of her head, base of neck, shoulders, and lower back bilaterally. She was in no acute distress. (Exhibit 12F/125). Dr. Akbar recorded no tender points on March 17, 2016 follow-up. (*See* Exhibit 13F/5).

Dr. Jadaun stated that the claimant's fibromyalgia made her back pain worse. (*See* Exhibit 6F/20). However, treating notes indicate little in the way of targeted treatment for fibromyalgia. On March 10, 2016, Dr. Ruiz recommended a trial of tizanidine for fibromyalgia/muscle spasms. (Exhibit 12F/126). However, the claimant did not take this medication for long. She was started on another muscle relaxant, Flexeril, and was on it by April 2016, but there was no mention it was prescribed for fibromyalgia. (*See* Exhibit 3F/7). Little, if any, mention was made of fibromyalgia thereafter, (*see* Exhibits 3F, 6F, 12F, and 13F), and on October 12, 2017 workup with Dr. Jadaun, referenced in the preceding paragraph, it was listed among her past medical history, but she was no longer taking Flexeril at that time. (Exhibits 6F/18). Fibromyalgia is not mentioned in current free clinic notes on moving to Oklahoma. (*See* Exhibits 14F and 15F).

As such, given the rare findings of tender points, lack of consistent mention in the longitudinal medical record, and the fact that, as discussed in further detail below, the claimant has consistently been in no acute distress on examination, I find her fibromyalgia to be nonsevere.

(A.R. 44-45).

Plaintiff argues that the ALJ's finding that her fibromyalgia was not a severe impairment is not supported by substantial evidence because the ALJ ignored the criteria for establishing fibromyalgia as a medically determinable impairment, and thus, Plaintiff's fibromyalgia is severe because Plaintiff meets these criteria. (ECF No. 18, pp. 20-23). As the Commissioner points out, Plaintiff conflates the agency guidelines for finding fibromyalgia to be a medically determinable impairment with the guidelines for finding a claimant's fibromyalgia to be severe after establishing that the claimant's fibromyalgia meets the criteria as a medically determinable impairment. *See Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P, 2012 WL 3104869 at * 2-5 (S.S.A. June 25, 2012).

Moreover, the ALJ's RFC assessment specifically accounted for Plaintiff's testimony that she experiences intense reactions to high heat or cold weather due to her fibromyalgia. (*See* A.R. 54; A.R. 64 ("She testified that her pain affects her ability to tolerate extreme heat and cold. The

longitudinal medical records, as discussed above, shows that he has been treated for pain throughout the period under consideration. Albeit, such treatment has been routine and conservative, and she has consistently been in no acute distress on examination. However, I find it reasonable that due to paid, she must avoid even moderate exposure to extreme heat and cold.")). Accordingly, even if the ALJ erred in finding Plaintiff's fibromyalgia to be non-severe, such error would be harmless because the ALJ considered Plaintiff's fibromyalgia impairment when formulating the RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that any error in failing to find an impairment severe at Step Two is harmless where the ALJ considers the limitations posed by the impairment in the Step Four analysis).

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is AFFIRMED, in part, and REMANDED, in part. On remand, the ALJ should address what, if any, additional limitations should be added to the RFC regarding Plaintiff's cervical degenerative disc disease impairment, and whether any change to the RFC affects the ALJ's ultimate decision regarding disability.

IT IS SO ORDERED.

Dated:   **June 27, 2023**              /s/ Erica P. Grosjean
                                                            UNITED STATES MAGISTRATE JUDGE